UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | | |
|---|---|---|
| ILDEFONSO GONZALEZ CRISPIN, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 4:26-CV-308-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| SAMUEL OLSON, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Petition for Writ of Habeas Corpus, [R. 1], filed on April 29, 2026 by Petitioner Ildefonso Gonzalez Crisipin. Therein, Petitioner alleges that Respondents—which include Samuel Olson, Chicago Field Office Director, U.S. Immigration and Customs Enforcement ("ICE") and Removal Operations; Todd Lyons, Director, ICE; Markwayne Mullin, Secretary U.S. Department of Homeland Security ("DHS"); Todd Blanche, Acting Attorney General of the United States; ICE; DHS; and Arthur Maglinger, Daviess County Jailer— have detained him in violation of the Immigration and Nationality Act (hereinafter, "INA") and the Fifth Amendment's Due Process Clause. *See, e.g.*, [R. 1, p. 10]. The Court issued an Order to Show Cause, [R. 6], on April 30, 2026, setting an evidentiary hearing date and establishing a briefing schedule for the parties. In response, the parties submitted briefs, [R. 9 (Respondents' Response); R. 11 (Petitioner's Reply)], and filed a joint motion to forego the evidentiary hearing. [R. 10]; *see also* [R. 12]. The matter has thus been fully briefed and is ripe for review.

Moreover, on May 11, 2026, the Sixth Circuit issued a decision in *Lopez-Campos v. Raycraft*, -- F. 4th --, 2026 WL 1283891 (6th Cir. May 11, 2026). The Court ordered Respondents

- 1 -

to consider the impact of that decision and advise as to whether Petitioner had been released or provided a bond hearing. [R. 15]. On May 20, 2026, Respondents filed a status report advising that Petitioner appeared before an Immigration Judge ("IJ") on May 18, 2026 for a custody redetermination, but the IJ found that it lacked jurisdiction due to Petitioner's status as an "arriving alien." [R. 16]. Petitioner then filed a letter arguing that he remains eligible for a bond determination despite his initial parole into the United States, and thus, *Lopez-Campos* does not completely resolve this matter. [R. 17].

For the reasons that follow, the Court will deny Petitioner's Petition for Writ of Habeas Corpus.

## I.    BACKGROUND

Petitioner is a thirty-seven-year-old native and citizen of Mexico who has been present in the United States since on or about January 27, 2024. *See, e.g.*, [R. 1, ¶ 34]; [R. 9-4, p. 1]. Petitioner asserts that, on that date, he entered the country "without admission." [R. 1, ¶ 34]. Respondents provide further clarification,[1] however, explaining that Petitioner arrived at a port-of-entry in Brownsville, Texas on January 27, 2024, without documents sufficient for lawful entry into the United States. [R. 9, p. 2]; *see also* [R. 9-1, p. 2]. At that time, DHS initiated immigration removal proceedings against him pursuant to 8 U.S.C. § 1229a by filing a Form I-862, Notice to Appear (hereinafter, "NTA"). [9-2]. The NTA identifies Petitioner as an "arriving alien" and charges Petitioner under 8 U.S.C. § 1182(a)(7)(A)(i)[2] as being an immigrant who "at the time of

---

[1] Petitioner does not dispute Respondents' description of the facts in his reply brief. *See* [R. 11].

[2] The NTA cites to "212(a)(7)(A)(i) of the Immigration and Nationality Act." [R. 9-2, p. 4]. The Court will instead use U.S.C. citations throughout for uniformity.

application for admission, is not in possession of" valid immigration documents. *Id.* at 4. The NTA

further alleges the following:

1. You are not a citizen or national of the United States;
2. You are a native of MEXICO and a citizen of MEXICO;
3. On or about January 27, 2024, you applied for admission to the United States at the Brownsville, Texas Port of Entry;
4. You are immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [INA].

*Id.* at 1.

On January 27, 2024, Petitioner was paroled into the United States pending his removal

proceedings. [R. 9-1, p. 2]; [R. 9-3 (I-94 Form)]; [R. 9-4, p. 2].[3] His parole expired on January 25,

2026.[4] [R. 9-3]. On April 9, 2026, Petitioner was arrested in Indiana for driving without a license.

[R. 9, p. 2]; [R. 9-4, p. 2]. At the time, it was discovered that Petitioner was not in possession of

valid immigration documents. [R. 9-4, p. 2]. On or about April 13, 2026, Petitioner was taken into

ICE custody pursuant to an arrest warrant. [R. 9-5].

By way of background, on July 8, 2025, DHS, in coordination with the United States

Department of Justice, issued a new policy entitled "Interim Guidance Regarding Detention

Authority for Applicants for Admission," which provides that all "applicants for admission"

should be detained pursuant to 8 U.S.C. § 1225, rather than § 1226. *See ICE Memo: Interim*

*Guidance Regarding Detention Authority for Applications for Admission*, American Immigration

---

[3] The I-94 form indicates that Petitioner's "Class of Admission" is "DT," indicating his parole status. *See* FAQs on the Effect of Changes to Parole and Temporary Protected Status (TPS) for SAVE Agencies, https://www.uscis.gov/save/current-user-agencies/guidance/faqs-on-the-effect-of-changes-to-parole-and-temporary-protected-status-tps-for-save-agencies (under "Non-Categorical Parole" heading, select "What does 'Non-Categorical Parole' mean?") (last visited April 3, 2026) (explaining that the Class of Admission for paroled aliens is often "'DT' though other parole related [Classes of Admission] may have been used.").

[4] At least one of the forms provided by Respondents indicates that Petitioner's parole expired on April 18, 2025. [R. 9-4, p. 2]. Regardless, the parties do not dispute that his parole expired prior to his April 9, 2026 arrest.

Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/6JYU-M2SY]. In a reversal of longstanding ICE policy, the change effectively subjects all persons who previously entered the United States without inspection to mandatory detention under § 1225(b)(2)(A), regardless of how long they have been present in the United States or whether they were detained at or near the United States border or other ports of entry. *See id.* Unlike noncitizens detained under § 1226, noncitizens detained under § 1225 are not entitled to a custody redetermination hearing; instead, their detention is mandatory.

Here, in his petition, Petitioner does not allege that he requested or was denied a bond redetermination hearing in front of an IJ pursuant to 8 C.F.R. § 1236. *See* [R. 1]. However, he argues in his petition that he is "eligible for custody redetermination or conditional parole pursuant to § 1226." *Id.* ¶ 37. As noted above and discussed below, he appeared before an IJ on May 18, 2026 for a custody redetermination hearing, but the IJ concluded that it lacked jurisdiction due to Petitioner's status as an "arriving alien." [R. 16]; [R. 17].

On April 29, 2026, Petitioner filed before this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, in which Petitioner alleged violations of the INA and the Fifth Amendment Due Process Clause. [R. 1]. Petitioner argues that his detention is governed by § 1226 of the INA, not under § 1225. *See, e.g.*, *id.* ¶ 42. Accordingly, Petitioner argues that he is entitled to a bond hearing before a neutral IJ pursuant to § 1226(a). *Id.* ¶ 27. In his prayer for relief, Petitioner seeks an order requiring his release. [R. 1, p. 11]; *see also* [R. 11, pp. 4–5 (arguing for immediate release)]. Respondents, in turn, assert that Petitioner's detention is proper under § 1225(b)(2)(A) of the INA because he was initially detained in 2024 as an arriving alien under

§ 1225, and upon the expiration of his parole, he remained an arriving alien subject to detention under § 1225. [R. 9, pp. 5–8].

On May 11, 2026, the Sixth Circuit issued a decision in *Lopez-Campos v. Raycraft*, -- F. 4th --, 2026 WL 1283891 (6th Cir. May 11, 2026). The Court ordered Respondents to consider the impact of that decision and advise as to whether Petitioner had been released or provided a bond hearing. [R. 15]. On May 20, 2026, Respondents filed a status report advising that Petitioner appeared before an Immigration Judge ("IJ") on May 18, 2026 for a custody redetermination, but the IJ found that it lacked jurisdiction due to Petitioner's status as an "arriving alien." [R. 16]. Petitioner then filed a letter arguing that he remains eligible for a bond determination despite his initial parole into the United States, and thus, *Lopez-Campos* does not completely resolve this matter. [R. 17].

## II.    LEGAL STANDARD

Habeas relief is available where a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The right to petition for a writ of habeas corpus is "'available to every individual detained within the United States,'" *Montiel v. Raycraft*, No. 1:25-cv-1610, 2026 WL 32076, at *1 (W.D. Mich. Jan. 6, 2026) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)), including "non-citizens in immigration-related matters." *Id.* (citations omitted). The petitioner seeking habeas relief bears the burden of proving by a preponderance of the evidence that his detention was unlawful. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022) (citation omitted).

Section 2241 confers jurisdiction on federal courts to review noncitizens' claims challenging the constitutionality of their detention during the pendency of removal proceedings.

*See Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."). Although § 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the . . . denial of bond or parole," the Supreme Court has recognized that district courts retain jurisdiction to hear habeas petitions concerning issues that are collateral or ancillary to removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) ("Section 1226(e) does not preclude challenges to the statutory framework that permits [an] alien's detention without bail." (quotations omitted) (citing *Demore*, 538 U.S. at 517)). Because Petitioner challenges the statutory and constitutional validity of his detention, and does not directly challenge his removal proceedings, the court finds that it has jurisdiction to consider Petitioner's claims.

## III.    ANALYSIS[5]

The relevant facts are undisputed. Concerning the legal arguments, Respondents argue that Petitioner's detention is proper under § 1225(b)(2)(A) of the INA because he was initially detained in 2024 as an arriving alien under § 1225, and upon the expiration of his parole, he remained an arriving alien subject to detention under § 1225. [R. 9, pp. 5–8].

The Court has already addressed this precise issue. That is, the Court previously considered the effect of a noncitizen's parole and subsequent re-detention after the expiration of such parole,

---

[5] Neither party has asserted any exhaustion-related arguments, *see* [R. 1], [R. 9], and no applicable statute or rule mandates exhaustion, *see Martinez-Elvir v. Olson*, 807 F.Supp.3d 725, 733, 733 n.4 (W.D. Ky. 2025) (noting no awareness of statutes or regulations requiring exhaustion). However, because many decisions in similar cases by district courts within the Sixth Circuit discuss this principal, the Court incorporates its analysis on exhaustion of remedies from a previous case, *Marintez-Elvir*, 807 F.Supp.3d at 732–35, and the Court waives the exhaustion requirement for the same reasons stated therein.

*Chirinos Chirinos v. Tindell*, No. 3:25-CV-789-CHB, 2026 WL 926941 (W.D. Ky. Apr. 6, 2026),

and therefore the Court fully incorporates by reference its reasoning and decision in that action.

There, this Court considered the plain language of 8 U.S.C. § 1182(d)(5)(A), the statute permitting

parole of noncitizens. *Id.* at *10–11. That statute provides,

> The Secretary of Homeland Security may, except [in certain scenarios not relevant
> here], in his discretion parole into the United States temporarily under such
> conditions as he may prescribe only on a case-by-case basis for urgent humanitarian
> reasons or significant public benefit any alien applying for admission to the United
> States, but such parole of such alien shall not be regarded as an admission of the
> alien and when the purposes of such parole shall, in the opinion of the Secretary of
> Homeland Security, have been served *the alien shall forthwith return or be returned
> to the custody from which he was paroled and thereafter his case shall continue to
> be dealt with in the same manner as that of any other applicant for admission to
> the United States.*

8 U.S.C. § 1182(d)(5)(A) (emphasis added). The Court concluded in *Chirinos Chirinos* that this

plain language "mandates that, upon the termination or expiration of an alien's parole, that alien

is returned to the status they held at the time of their parole, that is, the status under which they

were subject to the 'immediate charge and control' of DHS." *Chirinos Chirinos*, 2026 WL 926941,

at *11. The Court went on to explain that this interpretation of the statutory text is supported by

the INA's implementing regulations, specifically 8 C.F.R. § 212.5(e)(2)(i), which states that, upon

termination of parole, a noncitizen "shall be restored to the *status* that he or she had *at the time of

parole.*" *Id.* (quoting 8 C.F.R. § 212.5 (e)(2)(i)) (internal quotation marks omitted) (emphasis

added). The Court concluded,

> based on the plain language of the statute, and as reflected in the relevant
> regulations, the Court finds that the statute's mandate that an alien "shall forthwith
> return or be returned to the custody from which he was paroled" upon the expiration
> of parole requires him to return to the immigration *status* he held at the time he was
> paroled into the country at a port of entry.

*Id.* at *12 (emphasis in original).

In his reply brief, Petitioner does not address the plain language of the relevant statutes or regulations. Instead, he argues that his detention is governed by § 1226, citing to a single case, *Alkhatib v. Noem*, No. 4:25-cv-00139-GNS, [R. 20, pp. 4–5] (W.D. Ky. Dec. 16, 2025). *See* [R. 11, p. 1]; *see also* [R. 17]. Petitioner relies on a single sentence from that case: "After [the petitioner] was paroled into the United States in 2022, he has lived in this country until his detention earlier in 2025." *Alkhatib*, No. 4:25-cv-00139-GNS, [R. 20, p. 4]. However, closer inspection of that decision and the record in that case reveals that the petitioner was never paroled into the country; instead, he was granted bond pursuant to 8 C.F.R. § 1236. *Alkhatib*, No. 4:25-cv-00139-GNS, [R. 20, pp. 1–2], [R. 1-1]. That case is therefore inapplicable.

Petitioner cites no other legal authority to challenge the Court's decision in *Chirinos*. And indeed, as explained in *Chirinos*, other courts have ruled similarly. *See De La Torre v. Lyons*, No. 1:25-cv-01516-DJC-CSK, 2025 WL 3704448, at *2 (E.D. Cal. Dec. 22, 2025) (finding that "[t]he termination of [the petitioner's] parole means that he was 'returned to the custody from which he was paroled,'" and as such, "the relevant statutory basis for his detention is section 1225(b)(2)"); *Villanueva v. Chestnut*, 1:25-cv-01218-KES-HBK (HC), 2025 WL 2996559, at *3–4 (E.D. Cal. Oct. 24, 2025) (ruling similarly in determining that the petitioner was unlikely to succeed on the merits of her claim that she fell within the scope of § 1226); *Zamirov v. Olson*, No. 25 CV 6540, 2025 WL 2618030, at *3 (N.D. Ill. Aug. 29, 2025) (explaining that the petitioner's "parole expired on April 26, 2024," and under § 1182(d)(5)(A), "this reverted him back to the status of an arriving alien and applicant for admission," and as such, he could be "designated for expedited removal under § 1225(b)(1)(A)(iii)(II)"); *see also Faqirzada*, 2026 WL 63614, at *2; *Arcos Tasigchana*, 2026 WL 266170, at *2; *but see Gisell Adriana Pereira Ontiveros v. Warden*, 3:26-cv-632, 2026 WL 1109422, *5 (N.D. Ohio Apr. 24, 2026) (disagreeing with the *Chirinos Chirinos* decision).

In this case, the parties do not dispute that Petitioner was originally detained under § 1225 when he first entered the country in 2024, and that he was subsequently paroled pursuant to 8 U.S.C. § 1182(d)(5)(A). As to his status today, as the foregoing authority makes clear, upon the expiration of his parole, he reverted back to his prior immigration status that he held at the time of parole, that is, an applicant for admission actively seeking admission under § 1225. As such, the relevant statutory basis for his detention is § 1225, not § 1226.[6] Section 1225 "does not include any exception that permits the government to release detained aliens on bond." *Buentrostro-Mendez*, 166 F.4th at 499. Petitioner is therefore not entitled to a bond hearing and could not be released on bond, nor is he entitled to the immediate release that he seeks.

In reaching this conclusion, the Court acknowledges that the arrest warrant issued on November 20, 2025 by DHS expressly invokes the authority of § 1226. [R. 9-5]. This and other courts have considered this fact in other cases when determining whether a petitioner was subject to detention under § 1225 or § 1226. *See, e.g.*, *Martinez-Elvir v. Olson*, 807 F. Supp. 3d 725, 739 (W.D. Ky. 2025). But in the present case, it is clear (and undisputed) that Petitioner was initially detained under § 1225(b)(2) then subsequently released on parole. Given these circumstances, the authority outlined above, including the plain language of the statute, clearly provides that, upon the expiration of his parole, Petitioner must be returned to the custody, or immigration status, that he held at the time of his parole. The fact that DHS may have issued an unnecessary warrant, perhaps out of an abundance of caution, does not alter the Court's analysis. *See Chirinos Chirinos*, 2026 WL 926941, at *13 (ruling similarly).

---

[6] For the same reasons, *Lopez-Campos* does not resolve the issues in this case, as it did not address the effect of a Petitioner's parole.

## IV.    CONCLUSION

Because Petitioner is detained under §1225, he is not entitled to a bond hearing, and his claim that his detention is unlawful under the INA and the Fifth Amendment therefore fails.[7] The Court will therefore deny Petitioner's petition.

Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1.    Petitioner's Petition for Writ of Habeas Corpus, [**R. 1**], is **DENIED**.

2.    A separate judgment shall follow.

This the 21st day of May, 2026.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

---

[7] From the best the Court can tell, Petitioner's due process arguments rest on his assertion that his detention is governed by § 1226 and he is therefore entitled to a bond hearing. *See* [R. 1, p.10]; [R. 11, pp. 3–4].